UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT WOODS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  3:11-CV-1116-B |
| | § | |
| BANK OF AMERICA, N.A., BAC, | § | |
| HOME LOANS SERVICING, LP, and | § | |
| FEDERAL HOME LOAN | § | |
| MORTGAGE CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Bank of America, N.A., BAC Home Loans Servicing, and

Federal Home Loan Mortgage Corporation's (collectively "Defendants") Motion to Dismiss Plaintiff's

First Amended Complaint ("Motion") (docs. 20, 36). For the following reasons Defendants' Motion

to Dismiss is **GRANTED in part** and **DENIED in part**.

## I.

## BACKGROUND[1]

The present case involves events surrounding a home mortgage loan and subsequent

foreclosure sale. On or about February 29, 2008, Plaintiff Robert Woods ("Plaintiff" or "Woods")

purchased the real property located at 635 Chisholm Trail, Waxahachie, Texas 75165 (the

---

[1] The Court draws its factual account from the allegations contained in Plaintiff's First Amended
Complaint ("Pl.'s Am. Compl."). *See, e.g., Manguno v. Prudential Prop. And Cas. Ins. Co.*, 276 F.3d 720,
725 (5th Cir. 2002) (noting that when considering a motion to dismiss pursuant to Rule 12(b)(6), "all
facts pleaded in the complaint must be taken as true").

"Property"). Pl.'s Am. Compl. ¶ 8. Woods financed the purchase of the Property by executing a Note payable to Florida Capital Bank, N.A. ("Capital"), secured by a Deed of Trust. *Id*. at ¶ 9. The Deed of Trust named Mortgage Electronic Registration Systems, Inc. ("MERS") as Capital's nominee. *Id*. at ¶ 10. According to Plaintiff, the Note was later assigned to Federal Home Loan Mortgage Corporation ("FHLMC") and the Deed of Trust was assigned to BAC Home Loans Servicing, LP ("BAC") and its successor by merger, Bank of America, N.A. ("BOA"). *Id*. at ¶¶ 10–11. The Deed of Trust was assigned to BAC on February 9, 2010, with an effective date of January 18, 2010. *Id*. at ¶ 11.

According to Woods, in February 2009, the monthly payment due on the Note increased from $839.06 to $1,728.57. *Id*. at ¶ 13. Over the course of the next several months, Woods attempted to contact the mortgage servicer of his loan to dispute the amount owed. In June 2009, Woods received a statement from BOA for a monthly payment in the amount of $1,611.79. *Id*. at ¶ 14. Again, over the course of the next several months, Woods attempted to contact BOA to dispute the amount owed on his loan. According to Woods, from February 2009 to December 2009 neither his former mortgage servicer nor BOA responded to his attempts at communication. *Id*.

In December 2009, FHLMC sent Woods a letter regarding the Making Home Affordable ("MHA") program. *Id*. at ¶ 15. FHLMC informed Woods that he was behind on his mortgage payments and had to pay $4,136.11 to bring his account current. *Id*. Woods alleges FHLMC stated they would provide an "MHA packet" but failed to do so. *Id*.

Plaintiff's Property was then set for a foreclosure sale, to be conducted on April 6, 2010. *Id*. at ¶ 16. In April 2010, Woods then began contacting BOA to stop the foreclosure proceeding and discuss loan modification. According to Plaintiff, BOA made a number of assertions, including that

2

they would not foreclose while Plaintiff's loan was being considered for modification and that BOA would provide additional information to proceed in the loan modification process. *Id.* The April 2010 foreclosure was then postponed. *Id.* Over the course of the next several months, Plaintiff alleges he repeatedly contacted representatives of FHLMC and BOA, but failed to receive an informed response regarding his loan modification. *Id.* at ¶ 17. Plaintiff contacted BOA and spoke with BOA representatives on August 2, 2010 and August 3, 2010 and was told his loan was still in the modification process. *Id.*

On September 3, 2010, Woods contacted BOA and learned that the Property had been sold to FHLMC at a foreclosure sale on August 3, 2010. *Id.* at ¶ 18. According to Plaintiff, he never received notice of either the right to cure the default or notice of the foreclosure sale. *Id.* at ¶ 19. To date, Plaintiff remains in possession of the Property.

On May 2, 2011, Woods commenced this suit in the 40th District Court of Ellis County, Texas. On May 26, 2011, Defendants removed the case to this Court. On August 17, 2011, Plaintiff filed his First Amended Complaint (doc. 14) alleging the following causes of action: (1) breach of contract and anticipatory breach of contract; (2) violations of the Texas Debt Collection Practices Act; (3) common law tort of unreasonable collection efforts; (4) negligent misrepresentation and gross negligence; and (5) suit to quiet title and trespass to try title. Plaintiff also requested an accounting and declaratory relief. On October 4, 2011, Defendants filed the present Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim (doc. 20), pursuant to Federal Rule of Civil Procedure 12(b)(6). The Defendants' Motion is fully briefed and ripe for decision.

3

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). In order to survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. Rule Civ. P. 8(a)(2)).

4

## III.

## ANALYSIS

A.    *Breach of Contract*[2]

Under Texas law, the elements of a breach of contract action are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Am. Gen. Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010) (citing *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotations omitted). In his Amended Complaint and Response to Defendants' Motion to Dismiss, Plaintiff puts forth a number of bases for his breach of contract claim. Each basis for Plaintiff's breach of contract claim will be addressed in turn.

1.    *Failure to Provide Notice*

Plaintiff Woods alleges the Deed of Trust contains a provision that subjects the parties to "applicable law." Pl.'s Am. Compl. ¶ 22. When selling real property under contract, Texas Property Code § 51.002(d) requires that "the mortgage servicer of the debt shall serve a debtor in default under a deed of trust . . . with written notice by certified mail stating that the debtor is in default . . . and giving the debtor at least 20 days to cure the default before notice of sale can be given . . . ." Essentially, Plaintiff reasons as follows: Violations of applicable law constitute a breach of the contract; failure to provide notice of default is a violation of applicable law; therefore, a failure to provide notice of default constitutes a breach of the contract. Pl.'s Am. Compl. ¶ 22 ("So a violation

---

[2]   Plaintiff's first cause of action is entitled *Breach of Contract and Anticipatory Breach of Contract*, however, Plaintiff does not allege any specific facts that might support an anticipatory breach of contract claim. Any such claim is considered subsumed by Plaintiff's Breach of Contract claim.

of section 51.002(d) is also a breach of the Deed of Trust contract.").

It is worth noting that the foregoing logic advanced by Plaintiff to sustain his breach of contract claim is flawed by the very facts Plaintiff presents in support of this claim. Plaintiff relies on a provision of the Texas Property Code that requires mortgage servicers to serve debtor's a notice of default and opportunity to cure. Tex. Prop. Code § 51.002(d). The provision itself is triggered when the debtor defaults by failing to perform or tender performance under the contract—an essential element under any breach of contract claim.  Here, however, Plaintiff alleges, that he continued to pay under the contract, even including increased amounts he believed he did not owe. Pl.'s Am. Compl. ¶ 14. At no point does Plaintiff admit to being in default, only that he was "allegedly in default." *Id.* at ¶ 12. If such facts in Plaintiff's Amended Complaint are taken as true, the logical conclusion is that Plaintiff's breach of contract claim is premised on failing to receive a notice that was never in fact due under the law. In such a scenario, the failure to provide notice, standing alone, would not constitute a breach of contract claim.

The failure to provide notice, alone, however, is not the only theory supporting Woods's breach of contract claim.  So far as the Court can discern, Plaintiff puts forth an alternative argument. Under this alternative theory, Plaintiff alleges that even if he did breach the contract and was in default, he was in default because Defendants made it impossible for him to perform the contract and Defendants waived any nonperformance. Pl.'s Am. Compl. ¶¶ 26–27 ("[T]he foreclosure was improper because if Plaintiff was in default, it was only because [of] . . . Defendants' breach of the Deed of Trust."). Under Texas law, it is well-established that a party's nonperformance of a contract will be excused when that party's performance is prevented by the other party. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 629 (N.D. Tex. 2010) (citing *Dorsett v. Cross*, 106

S.W.3d 213, 217 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Erickson v. Rocco*, 433 S.W.2d 746, 751–52 (Tex.Civ.App.-Houston [14th Dist.] 1968, writ ref'd n.r.e.)).

Plaintiff argues his nonperformance was excused by Defendants because Defendants failed to properly communicate with him regarding his loan. Plaintiff alleges he repeatedly telephoned and left messages with his loan servicer and BOA from February to August 2009, but failed to receive any response. Pl.'s Am. Compl. ¶¶ 13–14. Plaintiff alleges that from December 2009 to April 2010, on multiple occasions he was promised loan modification forms and packets that were never delivered. *Id.* at ¶¶ 15–16.  Lastly, Plaintiff states that during July and August 2010, he was "transferred back and forth" between BOA and FHLMC without receiving information regarding the status of his loan. *Id.* at ¶ 17. Plaintiff concludes that he became "totally frustrated in his efforts to communicate with Defendants." *Id.* at ¶ 19.

Accepting Plaintiff's alleged facts as true, however, still does not elevate them to a viable level of excusing Plaintiff's performance under the Deed of Trust. Nowhere does Plaintiff allege that he tendered payment under the Deed of Trust and Defendants refused to accept or otherwise made it impossible for Plaintiff to perform. *See e.g. Burnett v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2011 WL 676955, at *5 (E.D. Tex. 2011) (recommending summary judgment on breach of contract claim where plaintiff alleged defendant refused to accept payment, but refusal was expressly allowed for in the terms of the deed of trust). In fact, Plaintiff admits that even following his failed attempts at communication from February to August 2009, he continued to make payments on his loan through at least August 2009. *Id.* at ¶ 14. Plaintiff has not, therefore, pled a viable breach of contract claim on the theory that his own nonperformance was excused by Defendants' prevention of his performance.

7

Thirdly, Plaintiff argues that if he did in fact breach the Deed of Trust, any breach was waived by Defendants. Under Texas law, a "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). To prove waiver, a party must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* Plaintiff's allegations that Defendants failed to communicate and later engaged in loan modification discussions do not show an intent to relinquish a right under the Deed of Trust. Plaintiff does not allege any facts that would allow the Court to infer that Defendants intentionally sought to relinquish their rights or engaged in activity inconsistent with their rights under the Deed of Trust.

Lastly, Woods argues that any alleged default and breach of the Deed of Trust was preceded by Defendants' own breach of a requirement of good faith and fair dealing. Pl.'s Am. Compl. ¶ 26. Plaintiff does not identify any provision in the Deed of Trust that creates a duty of good faith and fair dealing. Under Texas law, absent such language in the contract, a mortgagor-mortgagee relationship does not imply a duty of good faith. *See Fantroy v. Countrywide Home Loans, Inc.*, No. 3:06-CV-1889-K, 2007 WL 2254941, at *3 (N.D. Tex. 2007). Accordingly, Plaintiff has failed to state a claim for breach of contract for failure to provide notice of default under any of his alleged theories.[3]

---

[3] Although Plaintiff argues such facts in the context of a breach of contract claim, such facts, if actionable, are more properly pled as a wrongful foreclosure claim, which Plaintiff does not allege and the Court does not consider. *See Tamplen v. Bryeans*, 640 S.W.2d 421 (Tex. App.-Waco 1982) (setting aside foreclosure where defendant failed to provide proper notice).

8

2.      *Authority to Foreclose*

Woods also argues Defendants lacked authority to foreclose, therefore any foreclosure sale

constituted a breach of contract. Pl.'s Am. Compl. ¶¶ 23–25. Plaintiff contends that MERS lacked

the authority to assign either the Note or the Deed of Trust, therefore, MERS's assignment of the

Deed of Trust to BAC was ineffective, and the subsequent foreclosure was a breach of the Deed of

Trust. *Id.*

The Court finds Plaintiff's argument unpersuasive. First, Plaintiff lacks standing to challenge

MERS's assignment of the Deed of Trust to Wells Fargo because he was not a party to the

assignment. *See Eskridge v. Fed. Home Loan Mortg. Corp.*, No. W-10-CA-285, 2011 WL 2163989,

at *5 (W.D. Tex. Feb. 24, 2011). Second, MERS had the authority to assign the Deed of Trust, and

the subsequent foreclosure on the Deed of Trust was effective. "Under Texas law, where a deed of

trust . . . expressly provides for MERS to have the power of sale, then MERS has the power of sale."

*Richardson v. CitiMortgage, Inc.*, No. 6:10cv119, 2010 WL 4818556, at *5 (E.D. Tex. 2010 Nov. 22,

2010). In cases where "MERS is a beneficiary and nominee for both the originating lender and its

successors and assigns by the express language in the Deed of Trust, the situation falls within an

exception to the general rule that a party holding only the deed of trust cannot enforce the

mortgage." *Eskridge*, 2011 WL 2163989, at *5. In this case, the Deed of Trust explicitly designates

MERS as beneficiary and sole nominee for the lender and its successors and assigns. Deed of Trust

at 2. In this capacity, the Deed of Trust also grants MERS "the right to foreclose and sell the

Property." *Id.* MERS clearly had the power to foreclose on the Deed of Trust and assign those rights

to BAC who then sold the Property at the foreclosure sale. Third, Plaintiff fails to allege how an

assignment by MERS violates any terms or conditions of the Deed of Trust, or how any other defect

9

in the foreclosure otherwise constitutes a breach of the contract. Accordingly, Plaintiff's breach of contract claim is **DISMISSED with prejudice.**

B.      *Violations of the Texas Debt Collection Practices Act*

The Court next turns to Woods's claims Defendant violated various provisions of the Texas Debt Collection Practices Act ("DCPA"). Tex. Fin. Code §§ 392.001 et seq. Woods alleges Defendants' conduct and communications related to his mortgage loan violated the following provisions of the DCPA: Texas Finance Code §§ 392.301(a)(8); 392.303(a)(2); 392.304(a)(8); and 392.304(a)(19).

The DCPA prohibits a variety of conduct by debt collectors in the course of debt collection. *See e.g.* Tex. Fin. Code §§ 392.301–.304. As an initial matter, Defendants argue Woods's claims under the DCPA fail as a matter of law because foreclosure actions do not constitute "debt collection" as envisioned by the statute. Def.'s Br. in Support of Mot. to Dismiss 19. Courts on the Northern District have recently noted, however, that Texas courts have not decided this issue with regard to the DCPA. *See Biggers v. BAC Home Loans Servicing*, 767 F.Supp.2d 725, 730–32 (N.D. Tex. 2011). In *Biggers*, this Court made its best "*Erie* guess," and concluded that "the []DCPA can apply to actions taken in foreclosing real property." *Id.* at 732. The Court agrees with the conclusion reached in *Biggers*.

Because the Defendants' alleged actions fall within the purview of the DCPA, the Court now turns to whether Plaintiff has properly alleged sufficient facts to allow the Court to draw a reasonable inference that the Defendants violated the terms of the relevant statutes.

1.      *Subsection 392.301(a)(8)*

Subsection 392.301(a)(8) of the Texas Finance Code prohibits debt collectors from using

10

"threats, coercion, or attempts to coerce [including] threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). The statute, however, does not prevent debt collectors from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3).

In his Amended Complaint, Plaintiff does not specify precisely what conduct by Defendant constituted a violation of the statute. In his Response to Defendants' Motion to Dismiss, Plaintiff clarifies that Defendants' alleged prohibited action was foreclosing on the Property without providing notice of default and opportunity to cure pursuant to Texas Property Code § 51.002(d). Pl.'s Resp. 21. Plaintiff fails to identify, however, any conduct by Defendants that could be considered "threats, coercion, or attempts to coerce." A "threat" is defined as "a communicated intent to inflict harm or loss on another or another's property." Black's Law Dictionary 1618 (9th ed. 2009). "Coercion" is defined as "compulsion by physical force or threat of physical force." *Id.* at 294. Defendants' alleged actions and communications in the course of loan negotiations simply do not rise to the level of threats or coercion to be considered actionable under the statute. Accordingly, Plaintiff's DCPA claim pursuant to Subsection 392.301(a)(8) is **DISMISSED with prejudice**.

    *2.    Subsection 392.303(a)(2)*

Subsection 392.303(a)(2) of the Texas Finance Code prohibits debt collectors from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the [debt] obligation *unless* the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2) (emphasis added). Plaintiff alleges he remained current on his loan until at least August 2009. Pl.'s Am. Compl. ¶ 14. Plaintiff alleges the monthly payment due on his loan was

$839.06, but, in February 2009, Defendants delivered a statement that increased his monthly payment, without justification, to $1,728.57, and continued to charge excessive amounts for the months thereafter. Pl.'s Am. Compl. ¶ 33. Whether such increased charges were authorized under the Deed of Trust requires an inquiry more appropriate at the summary judgment stage. The Court finds Plaintiff has pled sufficient facts to state a claim under Subsection 392.303(a)(2) of the Texas Finance Code. Accordingly, Defendants' Motion to Dismiss with respect to this claim is **DENIED**.

       *3.*      *Subsections 392.304(a)(8), (19)*

Subsection 392.304(a)(8) of the Texas Finance Code prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt . . . ." Tex. Fin. Code § 392.304(a)(8). Subsection 392.304(a)(19) operates effectively as a "catch-all" provision, prohibiting a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code § 392.304(a)(19). Woods alleges Defendants misrepresented the character, extent or amount of his consumer debt when Defendants delivered monthly statements beginning in February 2009 that exceeded the amount he was obligated to pay. Pl.'s Am. Compl. ¶ 33. Woods also alleges Defendants engaged in unlawful deception under the statute when Defendants proceeded with the foreclosure after telling Woods they would cancel the foreclosure sale. *Id.* at ¶ 34. The Court finds Plaintiff has pled sufficient facts to state a claim under Subsections 392.304(a)(8) and (19) of the Texas Finance Code without considering whether such claims would survive summary judgment. Accordingly, Defendants' Motion to Dismiss with respect to these claims is **DENIED**.

       *4.*      *Violation of the Texas Deceptive Trade Practices Act*

Section 392.404 of the Texas Finance Code includes a tie-in provision that states any

12

violation under the DCPA will also constitute a deceptive trade practice, actionable under the Texas Deceptive Trade Practices Act ("DTPA"). Woods argues he is thus entitled to damages under the DTPA for any violations that may be proven under the DCPA. Pl.'s Am. Compl. ¶ 38. Defendants counter that Plaintiff lacks standing under the DTPA because he is not a "consumer" under the statute, and is therefore barred from recovery. Def.'s M. to Dismiss 28.

The Fifth Circuit in *Cushman v. GC Services, L.P.* 397 Fed. App'x 24, 27–29 (5th Cir. 2010) found that "a claimant under the DTPA must still have 'consumer' status in order to have standing." To be considered a "consumer" under the DTPA, one must "seek[] or acquire[] by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4). "Goods" include "tangible chattels or real property purchased or leased for use." *Id.* at § 17.45(1). "Services" include "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." *Id.* at § 17.45(2). Texas Courts have consistently held that borrowing money does not constitute acquisition of a good or service. *See Myers v. Bank of America, N.A.*, No. 4:11-cv-457, 2012 WL 1107687, at *2 (E.D. Tex. March 31, 2012) (citing *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex.1984); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex.1980)). "Although a loan is not in itself a good or service, a lender may be subject to a DTPA claim if the borrower's objective is the purchase of a good or service." *Marquez v. Federal Nat. Mortg. Ass'n*, No. 3:19-CV-02040-L, 2011 WL 3714623, at *5 (N.D. Tex. August 23, 2011) (citing *La Sara Grain Co.*, 673 S.W.2d at 567). Where, as in this case, however, the servicing or administration of the loan is merely incidental to a plaintiff's prior objective to purchase a residence, such events do not bestow consumer status upon the plaintiff for purposes of the DTPA. *Id.* at *6. Therefore, Plaintiff lacks standing and is barred from maintaining an action or recovering damages under the

13

DTPA. Accordingly, Plaintiff's request for damages under the DTPA is **DISMISSED with prejudice**.

C.      *Unreasonable Collection Efforts*

Unreasonable collection has evolved in Texas courts as an intentional tort covering a variety of conduct—so much so, that the elements of unreasonable collection have often evaded precise definition. *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.-Dallas 2008). Texas Courts have accepted, however, that the tort may be defined as "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.* (citations omitted). "Texas courts have found debt collection efforts tortious when lenders attempted to collect debts they were not owed." *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 635 (N.D. Tex. 2010) (citations omitted).

In this case, Woods alleges Defendants' conduct related to his attempts at modification and the resulting foreclosure sale constituted unreasonable debt collection. Specifically, Plaintiff references Defendants' failure to provide notice, failure to communicate, conversations related to potential loan modification, and additional charges and penalties placed on Plaintiff's account. Pl.'s Am. Compl. ¶ 42. Such allegations fall well short of conduct constituting willful, wanton, and malicious harassment. Where a debt is owed to a lender, a claim for unreasonable debt collection cannot survive when the lender simply tries to recover the debt, even if the parties dispute the amount of the debt owed. *Defranceschi v. Wells Fargo Bank, N.A.*, No. 4:10-CV-455-Y, 2011 WL 3875338, at *6 (N.D. Tex. Aug. 31, 2011) (citing *Narvaez, 757* F.Supp.2d at 635). Even if a defendant is negligent in collecting a debt owed by a plaintiff, such allegations are insufficient to support a claim for unreasonable debt collection. *Id.* (citing *Narvaez, 757* F.Supp.2d at 636). Here,

14

Plaintiff admits to owing a debt but disputes the amount owed. Plaintiff's allegations against Defendants taken as true, at most constitute mere negligence on the part of Defendants. Plaintiff has not pled sufficient facts to support a claim for unreasonable debt collection. Accordingly, Plaintiff's claim is **DISMISSED with prejudice**.

D.     *Negligent Misrepresentation and Gross Negligence*

Under Texas law, the elements of a negligent misrepresentation claim are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Plaintiff's allegations with respect to his negligent misrepresentation and gross negligence claims fall into three general categories. First, Plaintiff alleges Defendants made misrepresentations related to the loan modification process. Pl.'s Am. Compl. ¶ 46. Second, Plaintiff alleges Defendants made misrepresentations concerning the amount owed on his monthly loan payments. *Id.* at ¶ 47. Third, Plaintiff alleges Defendants misrepresented their legal capacity to collect on the loan. *Id.* More specifically, Plaintiff argues that on April 1, 2010, while speaking over the telephone with two BOA representatives, "Defendants represented . . . that Plaintiff *was* approved for a loan modification" even though no modification was ever made. *Id.* at ¶¶ 16, 46 (emphasis added). Plaintiff also argues that he received multiple documents stating his monthly payment was over $1,600 when his correct monthly payment was only $839.06. *Id.* at ¶¶ 13–14, 47. As discussed *supra* Part III, Section A.2., Defendants had proper legal capacity to transfer title, collect on the loan, and foreclose. In reading Plaintiff's Amended Complaint in the light most favorable to Plaintiff, Plaintiff argues that he relied on Defendants

15

misrepresentations in that if Defendant had properly characterized the status of his loan, he would have been able to cure any alleged default. *Id.* at ¶ 47.

Defendants are correct in noting that any agreement to modify the Plaintiff's loan must be in writing to satisfy the statute of frauds because Plaintiff's loan exceeded $50,000. Tex. Bus. & Com. Code § 26.02. Such an argument, however, is more appropriate at the summary judgment stage when the evidentiary record has been fully developed. Accordingly, Plaintiff has stated a claim for negligent misrepresentation and gross negligence, and Defendants' Motion to Dismiss with respect to these claims is **DENIED**.

E.      *Suit to Quiet Title and Trespass to Try Title*

Suit to quiet title and trespass to try title are two distinct causes of action. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.-Corpus Christi 2001). Under Texas law, a suit to quiet title, or an action to remove cloud to title, is an equitable cause of action that clears invalid charges against the title to real property. *Fricks*, 45 S.W.3d at 327. To prevail in a suit to quiet title action, a plaintiff must show "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Bell v. Bank of America Home Loan Servicing*, No. 4:11-cv-02085, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (citing *U.S. Nat. Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex.App.-Houston [1st Dist.] Dec. 30, 2011)). "Any deed, contract, judgment or other instrument not void on its face which purports to convey any interest in or makes any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Best Inv. Co. v. Parkhill*, 429 S.W.2d 531, 534 (Tex. Civ. App.-Corpus Christi 1968). In a suit to quiet title, a plaintiff must also rely on the strength of his or her own title, not the weaknesses of his or her

adversary's title. *Fricks*, 45 S.W.3d at 327.

Trespass to try title is a statutory cause of action that is the method used for determining title to real property. Tex. Prop. Code § 22.001. To prevail on a trespass to try title action, a plaintiff must prove title to the property by: "(1) proving a regular chain of conveyances from the sovereign, (2) establishing superior title out of a common source, (3) proving title by limitations, or (4) proving title by prior possession coupled with proof that possession was not abandoned." *Caress v. Lira*, 330 S.W.3d 363, 364 (Tex. App.-San Antonio 2010) (citations omitted). A plaintiff in a trespass to try title suit also must rely on the strength of his or her own title. *Fricks*, 45 S.W.3d at 327.

In support of his suit to quiet title and trespass to try title claims, Plaintiff relies entirely on the argument that FHLMC's acquisition of title at the foreclosure sale was improper. Pl.'s Am. Compl. ¶ 51 ("Absent the right to foreclose, the trustee could not transfer ownership of the property to [FHLMC]."). Plaintiff does not identify any specific defect in the foreclosure sale, but merely provides vague and conclusory allegations that "the trustee's sale is void, and [FHLMC] obtained no title." *Id*. Such allegations are not sufficient to prove superior title out of a common source. The Court has previously noted *supra* Part III, Section A.2., that MERS had legal capacity to transfer its interests to BAC, who then sold the Property at the foreclosure sale to FHLMC. Plaintiff does not identify how Defendants' claim to title may be otherwise invalid or unenforceable. Plaintiff also fails to allege any facts reflecting the superiority or strength of his own title. Plaintiff's allegations are insufficient to state a claim for either suit to quiet title or trespass to try title. *See Swim v. Bank of America, N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *8 (N.D. Tex. Jan. 20, 2012). Accordingly, Plaintiff's suit to quiet title and trespass to try title claims are **DISMISSED with prejudice.**

G.     *Accounting and Declaratory Judgment*

Woods seeks an accounting of all transactions on the mortgage loan as a form of relief. Pl.'s Am. Compl. ¶ 49; Pl.'s Resp. 31. Woods also seeks as a remedy, declaratory relief regarding whether either party breached the contract and whether the foreclosure was proper. Pl.'s Am. Compl. ¶¶ 52–53. "An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Watson v. Citimortgage, Inc.*, No. 4:10-cv-707, 2011 WL 4526980, at *9 (E.D. Tex. Sept. 30, 2011) (quoting *Brown v. Cooley Enters., Inc.*, No. 3:11-cv-0124-D, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011)). "If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues." *Id.* (citing *Shields v. Ameriquest Mortg. Co.*, No. 05-06-01647-CV, 2007 WL 3317533, at *2 (Tex. App.-Dallas 2007, no pet.)). A declaratory judgment action requires the existence of a present justiciable controversy. *Bell v. Bank of America Home Loan Servicing, LP*, No. 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("In a declaratory judgment action, '[b]ased on the facts alleged, there must be a substantial and continuing controversy between two adverse parties.'") (citations omitted). Plaintiff succeeded in stating a claim for violations of the DCPA, negligent misrepresentation, and gross negligence. Therefore, the Court declines to consider at this time whether an accounting or declaratory relief is an appropriate remedy in this case.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED in part**, and **DENIED in part**. Plaintiff's claims for breach of contract; violations of the DCPA Texas Finance

18

Code § 392.301(a)(8); violations of the DTPA; unreasonable collection efforts; suit to quiet title; and trespass to try title are **DISMISSED with prejudice**. Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's claims for violations of the DCPA Texas Finance Code §§ 392.303(a)(2) and 392.304(a)(8), (19); negligent misrepresentation; and gross negligence.

      SO ORDERED.

      Signed April 17, 2012

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE